STATE of Missouri, Respondent,

v.

Arthur MOTON, Appellant.

Nos. 56201, 56744.

Supreme Court of Missouri,
Division No. 1.

Feb. 22, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

James C. Jones, III, Darrell D. Wiles, St. Louis, for appellant.

BARDGETT, Judge.

Defendant Arthur Moton appeals from two separate convictions. In cause No. 56 201 (Circuit Court No. 1946–S, Honorable Lackland H. Bloom presiding), Moton was found guilty by a jury of robbery in the first degree by means of a dangerous and deadly weapon (§§ 560.120 and 560.135) of one Welton Rideout and sentenced by the court to twelve years' imprisonment on October 9, 1970, pursuant to § 556.280, RSMo 1969, V.A.M.S. In cause No. 56 744 (Circuit Court No. 1945–S, Honorable Harry M. James presiding), Moton was found guilty by a jury of robbery in the first degree by means of a dangerous and deadly weapon of one Calvin Cook and was sentenced on March 26, 1971, by the court to fifteen years' imprisonment to run consecutively to the sentence previously imposed in cause No. 56 201. Both convictions arose out of the same general episode and the appeals from the convictions have been consolidated for argument and decision.

On June 14, 1970, at about 3 a.m., defendant and another man, one Charles Robinson, walked into a Star service station in St. Louis and while Robinson held the service station attendants, Rideout and Cook, at gunpoint Robinson demanded and obtained money from attendant Rideout, and defendant, who did not have a gun, demanded and obtained money from attendant Cook. Robinson did not physically receive anything from Cook nor did defendant physically receive anything from Rideout. Defendant and Robinson then fled from the premises but were shortly apprehended by the police.

Defendant testified that he was at another place and not at the Star service station and did not participate in the alleged holdup.

The separate informations filed in these two cases each charged that Arthur Moton and Charles Robinson committed the offenses of robbery in the first degree by means of a dangerous and deadly weapon on June 14, 1970. In cause No. 56 201, Welton Rideout was the alleged victim; in cause No. 56 744, Calvin Cook was the alleged victim.

Cause No. 56 201 in which Rideout was alleged to be the victim was tried first and, as stated, defendant was found guilty of robbery in the first degree with a dangerous and deadly weapon.

Prior to the trial of the second case, cause No. 56 744, in which Cook was alleged to be the victim, defendant moved to dismiss the information asserting that to require him to stand trial would violate defendant's constitutional guaranty against double jeopardy under the United States Constitution, Amendments 5 and 14. The motion was overruled by the trial court and, as stated, defendant was tried and found guilty in the second trial of the robbery of Cook.

We will consider defendant's points on appeal in each case separately.

Re: Cause No. 56 201 (Circuit Court No. 1946–S).

■ This was the first case tried and is the one in which Rideout was robbed. The point asserted on this appeal is that the court erred in giving instruction No. 1, the verdict-directing instruction, because it authorized a finding of fact that defendant committed robbery on the person of Welton Rideout. The defendant contends that the theory of the state's case was that defendant aided and abetted Charles Robinson in the act of robbing Welton Rideout and there was no evidence that defendant robbed Welton Rideout. The evidence was sufficient to support a finding by the jury that defendant, acting jointly with Robinson, robbed Rideout. It was not essential to the conviction of defendant that defendant actually be the one who took money from Rideout where, as here, the two men acted together to produce the end result—robbery of Rideout.

■ State v. Bolden, Mo., 473 S.W.2d 355 (decided December 13, 1971, by this court) was an appeal from a conviction of first-degree robbery. The instruction complained of in Bolden is the same as the instruction complained of here, and the error alleged by Bolden was the same as the error asserted here, to wit, that the instruction should have required a finding that defendant aided and abetted Robinson. In Bolden we held the court did not err in giving the instruction complained of and what the court said in Bolden is wholly applicable to this case. The point is overruled.

The judgment in cause No. 56 201 is affirmed.

Re: Cause No. 56 744 (Circuit Court No. 1945–S).

The issues on this appeal involve (1) double jeopardy and (2) excessive punishment.

The information in this case is in all material respects the same as the information filed in No. 56 201 except that in this case the information alleges that defendant robbed Calvin Cook, whereas in cause No. 56 201 the information alleges the defendant robbed Welton Rideout.

After defendant was convicted in the first case and prior to trial of this, the second case, defendant moved to dismiss the information in this case "for the reason that the offense with which defendant is charged herein arises out of the same criminal act, occurrence, episode, or transaction as the offense with which defendant was charged and found guilty by the jury on August 26, 1970 in Cause No. 1946–S; and that to require defendant to stand trial in the present proceeding would violate defendant's constitutional guaranty against double jeopardy contained in the Fifth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment to the United States Constitution." The court overruled the motion to dismiss and defendant was tried and convicted of the charge alleged.

Having affirmed the judgment of conviction entered in the first trial, supra, the first question presented is whether the second trial was barred by the double jeopardy provision of the United States Constitution, Amendment 5, as made applicable to the states by Amendment 14.

Defendant states in his brief that "The prosecution's evidence in these two cases was practically identical. It showed that defendant committed a single unlawful act. He entered the service station with Charles Robinson. Robinson confronted Rideout and Cook with a gun; and while Robinson took money from Rideout, defendant took money from Cook. Then they both departed. In turn, defendant's evidence was the same in each case. He claimed that he was not at the service station premises at any time on the date in question, and that he did not commit a robbery there with Robinson."

Except for the conclusion that the evidence showed that defendant committed a *single* unlawful act, the foregoing accurately states the factual situation.

Claims of double jeopardy arise out of many different factual situations and we will not undertake to set them out here. Nor can there be a general rule stated that covers all double jeopardy claims without causing substantial confusion. We are here concerned with defendant's contention as it applies to the crime of robbery in the first degree.

■ Two of the essential elements of robbery in the first degree with a dangerous and deadly weapon are that there be a *person* who is put in fear of immediate injury to his *person* and that some property which is not owned by the defendant and at least is in the custody of the victim be taken from the custody of the victim.

At the point in time that Rideout and Cook were being held at gunpoint and put in fear of immediate injury to their persons but before any property was taken from their custody, the offense of robbery had not yet occurred. Thereafter, when property was taken from Rideout, one offense of robbery in the first degree was completed; however, there had not yet occurred a robbery as to Cook and it, of course, was not essential to the commission of the offense of robbery of Rideout that anything be taken from Cook. If, at this point, the robbers had departed, there, would have been no robbery of Cook although, as to Cook, other offenses may have occurred. However, the matter did not end there. The robbers did, acting together, take money from Cook and this, together with the other facts in the case, constituted the second robbery.

It is the defendant's position that the acts committed by defendant in robbing Rideout and Cook occurred practically simultaneously and were motivated by a single intent rather than a separate motive or intent as to each victim and, therefore, there was but one punishable criminal offense committed. Defendant describes this theory as the "same transaction" test and urges its adoption by this court. That is to say that if the acts of an accused come within

the scope of the defendant's definition of the "same transaction" then there is but one punishable offense. Therefore, if there is only one punishable offense committed, the double jeopardy provision of the United States Constitution, Amendment 5 applicable to the states through Amendment 14, prohibits double prosecutions as well as double punishments, and the state cannot split a single offense into parts and prosecute on the parts.

It also appears to be part of defendant's position that this court should adopt the "same transaction" test Mr. Justice Brennan speaks of in his concurring opinion in Ashe v. Swenson, 397 U.S. 436, 448, 90 S. Ct. 1189, 25 L.Ed.2d 469. As we understand Mr. Justice Brennan's opinion, the "same transaction" test would, with certain exceptions, *require* the state to prosecute a defendant at one trial for all of the offenses committed during a single episode or transaction but would permit the defendant to be punished for each separate offense of which he was found guilty. It would prohibit the state from prosecuting a defendant in separate trials for the several offenses committed during a single episode. As applied to the case at bar, Mr. Justice Brennan would permit the state to have tried Moton in one trial for the two robberies and if found guilty of both impose two sentences but would prohibit the state from prosecuting Moton in two separate trials for the two robberies.

Both theories would in this case prohibit the second trial of Moton. The first proposal of defendant would prohibit the second trial because "same transaction" results in a determination that a single punishable offense was committed and the state cannot split a single offense into parts and prosecute or punish each part separately. Mr. Justice Brennan's theory would prohibit the second trial because "same transaction" would be incorporated into the 5th Amendment double jeopardy provision so as to require that all offenses arising out of or during the "same transac-

tion" or "episode" be prosecuted in a single trial.

Mr. Justice Brennan's view of double jeopardy would have prohibited the trial of Ashe for the second robbery regardless of whether the first trial resulted in a verdict of guilty or not guilty. This is so because Justice Brennan believes the double jeopardy provision of Amendment 5 of the United States Constitution *requires* that *all* offenses occurring during a single episode or transaction be prosecuted in *one* trial. Mr. Justice Harlan in his concurring opinion in Ashe v. Swenson, *supra*, 397 U.S. at 448, 90 S.Ct. at 1196, states, "Hence, I join the Court's opinion. In doing so I wish to make explicit my understanding that the Court's opinion in no way intimates that the Double Jeopardy Clause embraces to any degree the 'same transaction' concept reflected in the concurring opinion of my Brother BRENNAN."

Insofar as this point on appeal is concerned, the factual situation of the robberies involved in Ashe v. Swenson and in this case may be considered as identical. It is apparent from the several opinions in the Ashe case that the United States Supreme Court had for consideration the possible adoption of the views expressed by Mr. Justice Brennan but rejected his view that the operative effect of the double jeopardy provision of Amendment 5 of the United States Constitution prohibited the state from prosecuting Ashe at separate trials for the several robberies. Had Mr. Justice Brennan's views been adopted, the second trial of Ashe would have been prohibited regardless of whether the first trial resulted in a verdict of guilty or not guilty, and the court would not have even reached the issue of collateral estoppel.

Defendant says this court has not consistently followed either the "same evidence" rule or the "same transaction" rule and the quotations from several cases appearing in defendant's brief do, on the surface, lend credence to this contention. However, with the exception of State v.

Citius, 331 Mo. 605, 56 S.W.2d 72, the cases cited by defendant in which the phrase "same transaction" was utilized concerned offenses that did not require, as a necessary element to their commission, the physical presence of the victim.

State v. Toombs, 326 Mo. 981, 34 S.W.2d 61, was a conviction for procuring the signing of a false and fraudulent stock certificate. Toombs had issued three certificates at the same time. He was convicted in the first trial of the issuance of one certificate and subsequently tried and convicted in a second trial on the second certificate. This court construed the statute offended against and held that the issuance of these certificates constituted a single offense and upheld Toombs' plea of double jeopardy.

State v. Bockman, 344 Mo. 80, 124 S.W. 2d 1205, was a situation where Bockman had stolen two heifers from the same stock range at the same time. The heifers were owned by two different people and the state after having obtained the conviction of Bockman for the theft of one of the heifers tried Bockman for the theft of the second heifer. Bockman asserted double jeopardy and this court sustained Bockman and reversed the conviction for the theft of the second heifer saying, "The State admits the theft of several articles of property belonging to different owners at the same time and from the same place constitutes, in law, but one offense . . .", citing State v. Citius, supra.

In State v. Citius the defendant was charged in a single indictment with robbery in the first degree of A. A. Polk and Nellie Polk, his wife. The evidence was that Citius held the two Polks at gunpoint and took property from each of them. At the close of the evidence, Citius moved that the state elect whether it would go to the jury on the charge of robbing A. A. Polk or of robbing Nellie Polk. The motion was overruled. Citius claimed error in the court's overruling of his motion to require the state to elect. In the opinion

affirming the judgment of conviction, this court made the following statement, 56 S. W.2d loc.cit. 74, "It is obvious that the robbery of the Polks was one transaction at one time and place, and was but one offense. Therefore if appellant had been charged separately he might have pleaded a conviction in one case in bar of prosecution of the second case." In so doing the court relied on State v. Toombs, supra, and Lorton v. State, 7 Mo. 55, 37 Am.Dec. 179.

In Lorton v. State, supra, the defendant was charged in separate indictments for stealing the goods of one Curle and of one Gibson. Lorton pleaded guilty to the first indictment and thereafter, when put to trial on the second indictment, interposed a plea of former conviction for the same offense. The facts, in short, were that Lorton stole the goods of both Curle and Gibson at one time and place while Curle and Gibson were asleep in the same hotel room. This court sustained Lorton's double jeopardy plea saying, loc.cit. 57, "The stealing of several articles of property, at the same time and place, undoubtedly constitutes but one offense against the laws, and the circumstance of several ownerships cannot increase or mitigate the nature of the offense."

If the issue here arose out of an attempt to prosecute defendant by separate charges of robbery of the same person at the same time, and the indictments differed in that one alleged part of the property taken was money, and the other alleged part of the property taken to be the victim's watch, then the Toombs and Bockman cases cited by defendant and the Lorton case would be apropos as the issue would involve the application of the double jeopardy rule where the state splits one offense—cause of action—into several parts and prosecutes the defendant separately on each. The legality of the splitting of a single crime into several parts was the issue in Toombs, Bockman and Lorton.

The same distinction cannot be made with reference to the statement quoted supra from State v. Citius. The factual situation surrounding the robberies in Citius and the factual situation of the robberies in the instant case cannot be distinguished. We have found no Missouri robbery case in which a double jeopardy plea has been upheld on the basis of Citius. We suspect the reason for this is that the statement in Citius with reference to robberies is simply wrong.

■ The law of Missouri regarding this aspect of double jeopardy in robbery cases in set forth in State v. Ashe, Mo., 350 S. W.2d 768. There this court, after reviewing and considering numerous authorities on the subject, held that where an accused robs two or more persons at the same time a prosecution for one of such robberies does not prevent a subsequent prosecution for another of the robberies as each of the robberies is a distinct offense. We adhere to this ruling and hold that the robbery of Rideout was a separate and distinct offense from the robbery of Cook.

■ We are mindful of the United States Supreme Court's decision in Ashe v. Swenson, supra, which reversed the conviction of Ashe on the ground that collateral estoppel is part of the double jeopardy provision of Amendment 5 of the United States Constitution. Collateral estoppel however does not even begin to come into play unless the defendant has been acquitted in the first trial. Here Moton was convicted at the first trial and consequently our decision here in no way conflicts with Ashe v. Swenson, supra.

The point is overruled.

■ Defendant's second point is that the punishment assessed by the trial court on the second conviction was excessive.

In the first case (No. 56 201) the court sentenced defendant to twelve years' imprisonment. In this, the second, case the court sentenced defendant to fifteen years' imprisonment and declared that the fifteen-year sentence be consecutive (cumula-

tive) to the previously imposed sentence of twelve years. Defendant, relying principally on North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, contends that the court erred in the sentencing in the second case to the extent that the term imposed in the second case (No. 56 744) exceeded the sentence imposed in the first case (No. 56 201).

Defendant's reliance on North Carolina v. Pearce, supra, is misplaced. Pearce involved a retrial for the same offense. The case at bar involves two trials for two separate offenses.

The point is overruled.

The judgment in No. 56 201 (Circuit Court cause No. 1946–S) is affirmed.

The judgment in No. 56 744 (Circuit Court cause No. 1945–S) is affirmed.

All of the Judges concur.